# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DONESHIA NEIL, Deceased, THROUGH HER SUCCESSOR IN INTEREST LATISHA CYPRIAN; LATISHA CYPRIAN, Individually,**<br><br>Plaintiff,<br><br>v.<br><br>**MODESTO CITY SCHOOLS DISTRICT, et al.,**<br><br>Defendants. | 1:17-cv-0256-LJO-SKO<br><br>**MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEEFENDANTS' MOTION TO DISMISS**<br><br>(ECF Nos. 32, 33, 35, 36) |

## I. INTRODUCTION

Doneshia Neil ("Neil"), deceased, through her successor in interest Latisha Cyprian, ("Plaintiff" or "Cyprian") filed a second amended complaint ("SAC") in this action on July 26, 2017 against Defendants, Modesto City Schools District ("MCSD") Board Members: Steven Grenbeaux, Sue Zwahlen, Chad Brown, Amy Neumann, Cindy Marks, and John Walker, (collectively "School Board Defendants"), and MCSD administrators: MCSD Superintendent Pamela Able, MCSD Associate Superintendent Virgina (Ginger) Johnson, MCSD Deputy Superintendent Craig Rydquist, MCSD Associate Superintendent Julie A. Betschart,[1] Fred Beyer High School Principal Dan Park, Fred Beyer High School Assistant Principal Nadene Galas,

---

[1] This Defendant's last name is alternately spelled "Betschart" and "Breschart" in the SAC. The Court will refer to this Defendant as "Betschart."

1

Fred Beyer High School Campus Supervisor Gary Carvalho, Thomas Downey High School Principal Richard Baum, and Thomas Downey High School Assistant Principal Christopher Chilles[2] ("Administrator Defendants"), and Does 1-50. This action arises out of Neil's suicide following discipline and expulsion from two public high schools in Stanislaus County. The MCSD School Board Defendants and Administrator Defendants[3] move to dismiss the SAC in part.

## II. FACTUAL ALLEGATIONS

In the fall of 2014,[4] Neil, an African-American girl, was enrolled as a high school freshman at Fred Beyer High School in Modesto, CA. (SAC ¶ 51). Neil was an honor roll student and an active participant in several Beyer High School sports teams. (*Id.*) On January 12, 2015, Neil was involved in a verbal altercation with a Caucasian student and the Caucasian student called Neil a "dyke." (*Id.* ¶ 53). The Caucasian student's boyfriend became involved in the argument and two of Neil's schoolmates interceded on her behalf. (*Id.*). Neil and at least one other African-American student were suspended following the incident, but the Caucasian student was not. (*Id.* ¶¶ 54-56). Neil alleges that she was not given notice or the opportunity to tell her side of the story by Defendants Galas, Park, and Carvalho in violation of the California Education Code and SCOE policy. (*Id.* ¶¶ 54-58). Defendant Galas later contacted Plaintiff to inform her that Neil could not return to school because Defendants Galas and Park heard that Neil had sent a threatening text message to the Caucasian student and that she made sexually harassing statements towards the Caucasian student. (*Id.* ¶¶ 60-62). Galas suggested that Neil be sent to an inferior alternative school, called Turnaround Opportunity School ("TOPS"). (*Id.* ¶ 62). Plaintiff Cyprian was pressured into withdrawing Neil from Beyer High School and sending her to Downey High School to avoid having to send her to TOPS. (*Id.* ¶¶ 62-64, 66-67). On

---

[2] This Defendant's last name is alternately spelled "Chilles," and "Chillis," in the SAC. The Court will refer to this Defendant as "Chilles."

[3] Defendants' motion to dismiss (ECF No. 33) also moves to dismiss on behalf of Modesto City Schools District. Modesto City Schools District was not included in the SAC as discussed below.

[4] The SAC indicates that Neil was enrolled in Beyer High School in the fall of 2015. However, most of the incidents alleged in the SAC, including Neil's suicide, took place in January and February of 2015. The Court assumes that Neil enrolled in Beyer High School in the fall of 2014 and that the SAC's use of "2015" was a typographical error.

2

January 26, 2015, Defendant Galas called Plaintiff and stated that she was aware that Neil's friend said Neil was talking about killing herself in the previous week. (*Id.* ¶ 65). Defendant Galas also said she had arranged Neil's enrollment at Downey. (*Id.*).

Shortly after transferring to Downey High School, Neil was accused of being involved in a fight and suspended for leaving school by Defendants Chilles and Baum without notice or an opportunity to be heard. (*Id.* ¶¶ 67-68). Neil steadfastly denied any involvement in the incident. (*Id.*) On February 6, 2015, while Neil was suspended, her mother was informed by Defendant Chilles that Neil could not return to Downey High School, and that she could either enroll at TOPS or return to Beyer High School. (*Id.* ¶ 70). Plaintiff contacted Defendant Galas to try to re-enroll Neil at Beyer High School, but was unsuccessful. (*Id.*)

At some time on February 6, 2015,[5] Neil committed suicide by consuming a toxic, lethal dose of over-the-counter antihistamine (allergy) medicine. (*Id.* ¶ 71). Chief Deputy Coroner Sergeant Ed Ridenour of the Stanislaus County Coroner's Office made relevant observations about Neil's death, drawing in part on Neil's suicide note. (*Id.*). Sergeant Ridenour noted that Neil indicated in her suicide note that she "believed her life was over [and that] she based [her belief in part] on being expelled from Beyer High School." (*Id.*) Sergeant Ridenour also noted that Neil "mentioned [in her suicide note] about being transferred to a new school and not having any friends there." (*Id.*). Sergeant Ridenour also indicated that "[b]ased on my training and experience, I believe . . . other incidents which may have directly influenced her decision [to commit suicide] were the recent expulsion from school." (*Id.*).

### III. PROCEDURAL HISTORY

Plaintiff filed a first amended complaint ("FAC") in this action on April 24, 2017. (ECF No. 10). In addition to the School Board Defendants and Administrator Defendants referenced in the SAC, the FAC included claims against Defendants Stanislaus County, Stanislaus County Office of Education ("SCOE") (collectively, "Stanislaus Defendants"), and the Modesto City

---

[5] The SAC lists this date as February 6, 2016 in some paragraphs (SAC ¶ 71), while in other paragraphs the date is listed as February 6, 2015 (SAC ¶ 1). Based on the context, it appears that "2016" is a typographical error, and that Plaintiff intended this date to be February 6, 2015.

3

Schools District. (*Id.*). The FAC included four causes of action: 1) deprivation of Plaintiff's First and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983 ("§ 1983"); 2) violation of the Equal Education Opportunities Act of 1974 ("EEOA") (20 U.S.C. § 1703); 3) violation of Title VI (42 U.S.C. § 2000d *et seq.*); and 4) *Monell* liability under 42 U.S.C § 1983 against Stanislaus County. (*Id.*). MCSD School Board and Administrator Defendants, as well as Modesto City Schools District, moved to dismiss the FAC in part (ECF Nos. 20-21) and the Court granted in part and denied in part Defendants' motion to dismiss and granted leave to amend (ECF No. 30).

In its SAC, Plaintiff no longer includes the Stanislaus Defendants or the Modesto City Schools District and states claims against only the School Board and Administrator Defendants in their individual capacities. (ECF No. 31). The SAC brings four causes of action, all pursuant to 42 U.S.C. § 1983. In sum and substance, these § 1983 claims include: 1) violation of Plaintiff Cyprian's own rights under the First and Fourteenth Amendments to a familial relationship with her daughter (first cause of action); 2) violation of Neil's Fourteenth Amendment right to substantive due process under the "danger creation" doctrine (second cause of action); 3) violation of Neil's Fourteenth Amendment procedural and substantive due process rights, which also appears to include equal protection claims (third cause of action); and 4) violation of one or both Plaintiff Cyprian and Neil's'[6] Fourteenth Amendment rights to substantive due process under a theory of failure to train and failure to investigate (fourth cause of action) (ECF No. 31, ¶¶112-152).[7] Plaintiff alleges federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 1343(a)(3) and (4). Venue is proper in this Court.

Now before the Court is the School Board and Administrator Defendants' motion to dismiss the first, second, and fourth causes of action set forth in the SAC. (ECF No. 32-33). The

---

[6] The caption for the fourth cause of action states: "Violation of Plaintiff CYPRIAN's Procedural and Substantive Due Process Rights Under the Fourteenth Amendment by Defendants' Violation of DONESHIA's Civil Rights, pursuant to 42 U.S.C. §§ 1983, 1988, Supervisory Defendants Deliberate Indifference to the Need to Train Subordinates." (SAC ¶ 141).

[7] While the Court did not dismiss the FAC's second cause of action (20 U.S.C. § 1703) or third cause of action (42 USC § 2000d *et seq.*) as to Plaintiff as successor in interest to Neil (ECF No. 30 at 13, 15), Plaintiff no longer includes either of these claims in the SAC.

4

Defendants first argue that Modesto City Schools District should be dismissed since it was no longer included in the case caption or described in the SAC. (ECF No. 33 at 4). Second, the Defendants argue that claims against School Board Defendants and Defendants Able, Johnson, Rydquist and Betschart should be dismissed because the SAC fails to set forth factual allegations linking those individuals to alleged violations. (*Id.*). Third, Defendants argue that the first cause of action fails to state a "wrongful death" substantive due process claim under § 1983. (*Id.* at 6). Fourth, Defendant argues that the second cause of action "improperly seeks relief for 'wrongful death' damages in [sic] behalf of the Decedent." (*Id.* at 7). Last, Defendant argues that the fourth cause of action fails because Plaintiff Cyprian does not have standing and because it "does not allege the deprivation of any specific right." (*Id.* at 8-9).

Plaintiff opposed Defendants' motion (ECF No. 35).[8] Defendants submitted a reply. (ECF No. 36). Defendants' motion is now ripe for review, and is suitable for disposition without oral argument. *See* Local Rule 230(g).

## IV. **STANDARD OF DECISION**

As recited in the Court's prior order on Defendants' motion to dismiss the FAC, a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the allegations set forth in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether a complaint states a claim upon which relief may be granted, the Court accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what

---

[8] Plaintiff submitted an opposition brief to the motion to dismiss that was nine pages over the permitted page limit without permission of the Court and in violation of this Court's standing order. The Court struck the last nine pages of the opposition and did not consider those pages. (ECF No. 37).

5

the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. In other words, the complaint must describe the alleged misconduct in enough detail to lay the foundation for an identified legal claim.

"Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). To the extent that the pleadings can be cured by the allegation of additional facts, the Court will afford the plaintiff leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## V. DISCUSSION

### A. Dismissal of Modesto City Schools District

Moving Defendants request that the Court dismiss Modesto City Schools District as a Defendant in this action since it was removed from the case caption in Plaintiff's SAC, no longer

appears in the "Parties and Procedure" section of the SAC, and is not named in any cause of action therein. (ECF No. 33 at 4). Plaintiff's opposition acknowledges that they "have not intended to state a claim Against Modesto City Schools" and states that Modesto City Schools District is immune from liability under the Eleventh Amendment. (ECF No 35 at 22). Accordingly, the Modesto City Schools District is dismissed from this action.

**B.      First Cause of Action For Loss of Familial Relationship Pursuant to § 1983**

The first cause of action states § 1983 claims against the School Board Defendants (Grenbeaux, Zwahlen, Brown, Neumann, Marks, Walker), as well as Defendants Able, Johnson, Rydquist, Betschart, Park, Galas, Baum, and Carvalho for the violation of Plaintiff Cyprian's substantive due process right to a familial relationship with her daughter. (SAC ¶ 112-116).[9] Defendants' motion argues that Plaintiff has failed to state a substantive due process claim by failing to show that any of the named Defendants acted with deliberate indifference. (ECF No. 33 at 6-7).[10]

To state a claim under § 1983, plaintiff must allege that: (1) the defendant was acting under color of state law at the time the complained of act was committed; and (2) the defendants' conduct deprived plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *Jensen v. City of Oxnard*, 145 F.3d 1078, 1082 (9th Cir. 1998). Parents and children may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in the companionship and society of their child or parent through official conduct. *See Lemire v. Cal. Dept. of Corrections & Rehabilitation*, 726 F.3d 1062, 1075 (9th Cir. 2013) (parents and children); *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991) (parent). "[T]he Due Process Clause is violated by executive action only when it can be properly characterized as arbitrary, or conscience shocking, in a constitutional sense." *Cty. of*

---

[9] Defendant Chilles is not included in the first cause of action's caption nor in the any of the allegations included as part of the first cause of action (SAC ¶¶112-116). Therefore, the Court concludes that Plaintiff is not suing Defendant Chilles with respect to the first cause of action.

[10] Defendants separately argues that as to Defendants Grenbeaux, Zwahlen, Brown, Neumann, Marks, Walker, Able, Johnson, Rydquist, and Betschart there are no allegations that the "<u>official personally</u> engaged in conduct that would give rise to liability." (ECF No. 33 at 4). Because resolution of the question of whether there was a substantive due process violation would preempt the need to address the question of whether the allegations as to these Defendants is sufficient, the Court first addresses Defendants' substantive argument.

*Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (internal quotation marks omitted). The cognizable level of executive abuse of power is that which "shocks the conscience" and "violates the decencies of civilized conduct." *Id.* at 846. Mere negligence or liability grounded in tort does not meet the standard for a substantive due process decision. *Id.* at 848-49. A Plaintiff can satisfy the "shocks the conscience" standard either by (1) showing that a state official acted with "deliberate indifference," or (2) showing that a state official "acted with a purpose to harm." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008).

Defendants concede that Plaintiff Cyprian has standing as decedent's parent to bring the substantive due process claims in the first cause of action. (ECF No. 33 at 6). However, the renewed motion to dismiss argues that Plaintiff has failed to establish that Defendants "acted with 'deliberate indifference' to the possibility that imposing discipline upon Ms. Neal [sic][11] could affect her mental state such that she would commit suicide." (ECF No. 33 at 6) (citing SAC ¶ 114).[12]

Generally, a school district or state official's "failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Harry A. v. Duncan*, 234 F. App'x 463, 464 (9th Cir. 2007) (quoting *DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 197 (1989)). Because Defendants did not actually inflict the ultimate harm, Plaintiff must establish that defendants, as supervisors, acted with deliberate indifference in failing to prevent Neil's suicide. *See Duncan*, 234 F. App.'x 463, 465. To demonstrate deliberate indifference to the risk of a suicide, a plaintiff must show: "(1) an unusually serious risk of harm, (self-inflicted harm in a suicide case), (2) defendants' actual knowledge of (or, at least, willful blindness to) that elevated risk, and (3) defendants' failure to take obvious steps to address that known, serious risk." *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th

---

[11] Defendants' motion to dismiss misspells Neil's name as "Neal" throughout. (ECF No. 33).
[12] The only argument that Plaintiff made within the permitted page limit concerning Defendants' motion to dismiss the first cause of action was that the challenge has been waived since Defendant did not raise the argument in its first motion to dismiss (ECF No. 35 at 30-31). However, the cases Plaintiff cites deal with Fed. R. Civ. P. 12(g) and the requirement that all Rule 12 defenses must be included when a motion is brought under Rule 12. This scenario is not applicable here.

Cir. 1996) (quoting *Manarite v. City of Springfield*, 957 F.2d 953, 956 (1st Cir. 1992)); *see also Duncan*, 234 F. App'x 463, 465.

Plaintiff has made no factual allegations that demonstrate that defendants were deliberately indifferent to an "unusually serious risk of harm," i.e. Plaintiff's suicide. Plaintiff's SAC includes one paragraph with a factual allegation that Defendant Galas was told by Neil's friend that Neil talked about killing herself a week prior (following her first suspension) and that Galas notified Plaintiff Cyprian of the fact (SAC ¶65).[13] The other allegations in the SAC contain conclusory statements that Defendants Park, Galas, Baum, Chilles, and Carvalho "had some knowledge that [Neil] was suicidal and distraught" and that they knew that Neil "was much more likely to commit suicide after a harsh disciplinary event." (SAC ¶122, 123). The basis for this alleged knowledge is warnings and publications contained on the California Department of Education website concerning suicide prevention in schools (SAC ¶¶39-50). These generalized allegations, including national studies and publications, are insufficient to establish knowledge of "unusually serious risk" of harm in this particular case. Nor are there allegations in the SAC to suggest that there were other suicides at either Beyer or Downey such that the Defendants had prior notice that suicide was a potentially serious risk as a result of discpline. *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (holding that student committing suicide was unforeseeable result of harsh school discipline and extraordinary and thus Plaintiffs (student's parents) failed to establish proximate cause with respect to the negligence claim);[14] *see also Hasenfus v. Lajeunesse*, 175 F.3d 68, 70-73 (1st Cir.1999) (holding that a school had no duty to protect a student from attempted suicide, even when there had been attempts by seven other students in the preceding three months).[15] Additionally, Defendant Galas addressed the situation to some extent

---

[13] A case cited in Plaintiff's SAC, *Wyke v. Polk Cty. Sch. Bd.*, 898 F. Supp. 852, 857 (M.D. Fla. 1995), *aff'd in part*, 129 F.3d 560 (11th Cir. 1997), *certified question withdrawn*, 137 F.3d 1292 (11th Cir. 1998), relied on *Deshaney*, 489 U.S. at 197, and held that defendants actions "did not rise to the level of deliberate indifference," where defendants were aware of two suicide attempts by the student at school that day but did not take any action to respond or notify his parents and the student committed suicide the next day at home.

[14] The standard of culpability for a negligence claim is lower than what is required to show deliberate indifference with respect to a substantive due process violation under § 1983. *Grubbs*, 92 F.3d 894, 899 (9th Cir. 1996).

[15] The facts of *Armijo By & Through Chavez v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1264 (10th Cir. 1998), cited in the SAC, are distinguishable. That case involved the denial of summary judgment where a special education

by notifying Plaintiff of Neil's suicidal statement to her friend. *See Duncan*, 234 F. App'x 463, 465 ("Failing to investigate a vague, second-hand and unsubstantiated report might amount to negligence, but does not constitute actual knowledge or willful blindness."). Second hand knowledge of one remark concerning suicide does not establish an unusually serious risk of harm and the facts alleged simply do not show that Defendants acted with deliberate indifference to a known risk.

Plaintiff fails to state a claim for a violation of substantive due process rights under the First and Fourteenth Amendments to a familial relationship with her daughter pursuant to § 1983.[16] Therefore, the first cause of action is DISMISSED WITH LEAVE TO AMEND.[17]

## C. Second Cause of Action For Violation of Substantive Due Process On Behalf of Neil Against Park, Galas, Baum, Carvalho[18]

Defendants argues that the second cause of action is a "re-packaged version of the First Cause of Action" and then makes a confusing argument concerning Neil's standing to bring a wrongful death claim pursuant to § 1983 based on her own death. (ECF No. 33 at 7). The second cause of action alleges a violation of Neil's substantive due process rights. (SAC ¶¶ 117-127).[19] Contrary to Defendants' assertion, Plaintiff is entitled to bring such a claim as Neil's successor in interest. Under 42 U.S.C. §1988, a § 1983 claim that accrued before death survives the decedent

---

student who expressed threats of suicide, was taken home by Defendants, the principal and school counselor, after his suspension, and Defendants knowingly left him at home alone where they were aware he would have access to firearms and did not notify his parents about his emergency removal from school.

[16] There is no mention of the third cause of action in the motion to dismiss. The standard for evaluating whether Neil has stated a *substantive* due process claim in the third cause of action would be the same as the evaluation for the first cause of action. However, as Defendants do not move to dismiss the third cause of action, which states claims pursuant to §1983 for procedural and substantive due process violations, as well as equal protection violations, the Court makes no determinations as to the third cause of action. To the extent the substantive due process allegations in the third cause of action are based upon the allegations discussed in connection with the first cause of action, they are legally infirm for the reasons discussed above.

[17] This will be the last opportunity for amendment. The complaints in this case have not been models of clarity. Counsel is reminded of his obligation under Federal Rule of Civil Procedure 11 to research thoroughly the relevant legal standards before re-asserting any claim for relief.

[18] Defendant Chilles is again not included in the caption of this cause of action but is included in the allegations that are part of this cause of action. The Court assumes Defendant Chilles is not meant to be included as a Defendant in the second cause of action. Plaintiff shall clarify the applicability of this claim to Defendant Chilles upon amendment.

[19] While there is one paragraph contained in the second cause of action that mentions the First Amendment, this appears to be a typographical error. (SAC ¶118).

where state law authorizes a survival action as a "suitable remedy ... not inconsistent with the Constitution and laws of the United States." 42 U.S.C. § 1988; *Robertson v. Wegmann,* 436 U.S. 584, 588-90 (1978); *Rose v. City of Los Angeles*, 814 F. Supp. 878, 881 (C.D. Cal. 1993). California law provides for such a survival action. Pursuant to Cal. Civ. Proc. Code § 377.20(a), "a cause of action for or against a person is not lost by reason of the person's death, but survives subject to the applicable limitations period." "A cause of action that survives the death of the person ... may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest." Cal. Civ. Proc. Code § 377.30. A "'decedent's successor in interest' means the beneficiary of the decedent's estate or other successor in interest who succeeds to a cause of action or to a particular item of the property that is the subject of a cause of action." Cal. Civ. Proc. Code § 377.11. There appears to be no doubt that Plaintiff Cyprian qualifies as Neil's successor in interest. Therefore, acting in that capacity, Plaintiff Cyprian has standing to pursue any cognizable § 1983 claim on behalf of Neil.

In construing the allegations in the SAC liberally, the second cause of action under § 1983 appears to be a claim that Defendants Park, Galas, Baum, and Carvalho violated Neil's substantive right to bodily integrity under the Fourteenth Amendment as articulated through the danger creation doctrine. (SAC ¶¶ 117-127). "It is well established that the Constitution protects a citizen's liberty interest in her own bodily security." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006). It is also well established that the public has no constitutional right to sue state actors who fail to protect them from infliction of a private harm. *Id.* This general rule is modified by two exceptions: (1) the special relationship exception; and (2) the danger creation exception. *Johnson v. City of Seattle*, 474 F.3d 634, 639 (9th Cir. 2007). The special relationship exception applies to situations in which the state has custody over or has involuntarily hospitalized a person. *See, e.g.*, *Youngberg v. Romeo*, 457 U.S. 307, 314-325 (1982) (patient in custodial facility for individuals with intellectual disabilities denied protection from violence); *Estelle v. Gamble*, 429 U.S. 97, 103-104 (1976) (prisoner denied Eighth Amendment right to medical care). The exception does not normally apply to the student-school relationship. *See Funez ex rel. Funez v. Guzman*, 687 F. Supp. 2d 1214, 1229-30 (D. Or. 2009) (reviewing

11

caselaw and concluding compulsory school attendance policy does not trigger special relationship exception). The danger creation exception is spelled out in detail in *Kennedy*, which delineated a two-part test, requiring (1) official (state) action that affirmatively placed an individual in danger, and (2) deliberate indifference to that known or obvious danger. *Kennedy*, 439 F.3d at 1062-64.

Because Defendants misread what the second cause of action alleges, Defendants' motion does not address the law for bringing a substantive due process claim under either the special relationship or the danger creation exception. The extent to which the SAC states such a claim in substance is unclear, but Defendants do not challenge the substance of any such claim in their motion. Therefore, Defendants' motion to dismiss the second cause of action is DENIED.

**D.  Fourth Cause of Action For Supervisor Liability For Failure to Train and Failure to Investigate Against Defendants Grenbeaux, Zwahlen, Brown, Neumann, Marks, Walker, Able, Johnson, Rydquist, and Betschart**

The fourth cause of action pursuant to § 1983 appears to bring claims of supervisor liability for failure to train on suicide prevention, race discrimination and gender discrimination, as well as claims for equal protection related to alleged failures to investigate complaints of disproportionate suspension and expulsion of African American students. (SAC ¶¶ 141-152). This claim is stated against the School Board Defendants, as well as Administrator Defendants Able, Johnson, Rydquist, and Betschart. Defendants make two arguments as to why the fourth cause of action should be dismissed: (1) Ms. Cyprian cannot seek relief for violations of the civil rights of her daughter; and (2) the fourth cause of action does not allege the deprivation of a specific right secured by the Constitution. (ECF No. 33 at 8-9). In addition, Defendants' motion argues that, as to these Defendants, Plaintiff has not shown that "the official personally engaged in conduct that would give rise to liability." (ECF No. 33 at 4-5).

**1.   Plaintiff Cyprian's Standing**

It is not altogether clear whether Plaintiff Cyprian intends to bring the fourth cause of action as Neil's successor in interest or in her individual capacity or both.[20] However, as

---

[20] The caption for the fourth cause of action indicates that it is a claim for a violation of Plaintiff Cyprian's rights while the allegations include statements regarding the violation of Neil's constitutional rights. (*See supra* note 6).

12

discussed, parents may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in the companionship and society of their child through official conduct. *Lemire*, 726 F.3d at 1075. To the extent the fourth cause of action asserts claims that the failure to train resulted in Plaintiff's loss of her companionship with her child, Plaintiff Cyprian has standing to make such a claim as discussed above and in the Court's Order on the first motion to dismiss. (*See* ECF No. 30 at 12).

To the extent that the fourth cause of action makes allegations that Neil's due process and equal protection rights to be free from discrimination at school were violated, Neil's successor in interest is the appropriate person to bring those claims on her behalf since it was Neil's rights that allegedly were violated. *Allen v. Stratton*, 428 F. Supp. 2d 1064, 1071 (C.D. Cal. 2006) ("Generally, 'constitutional rights are personal and may not be asserted vicariously.'") (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 610, (1973)); *Rose v. City of Los Angeles*, 814 F. Supp. 878, 881 (C.D. Cal. 1993) ("It is well established that the federally protected rights that are enforceable under § 1983 are 'personal' to the injured party."); *Cherry v. Clark Cty. Sch. Dist.*, No. 2:11-CV-1783 JCM GWF, 2013 WL 3944285, at *9 (D. Nev. July 22, 2013) (holding that Plaintiff parents could not recover damages for harms suffered for substantive due process and equal protection violations where the majority of the harm caused by the constitutional violations were harms primarily against their child). To the extent the fourth cause of action contains allegations of a violation of Neil's Fourteenth Amendment rights, Plaintiff Cyprian does have standing to bring these claims as Neil's successor in interest as discussed above in Section V(C).

### 2. <u>Substantive Claims for Supervisory Failure to Train and Failure to Investigate</u>

Defendants states that "Plaintiffs' Fourth Cause of Action fails to state a claim upon which relief may be granted, and should be dismissed," because it is comprised of "factually-devoid legal recitations that sound in, at most, negligence." (ECF No. 33 at 9). Defendants again misunderstand the nature of the claim that Plaintiff asserts. Plaintiff is essentially asserting a claim of supervisory liability for failure to train (and failure to investigate) against the School Board Defendants and Defendants Able, Johnson, Rydquist, and Betschart in their supervisory

capacity. Defendants' motion also separately argues that as to Defendants named in the fourth cause of action, there are no allegations that the "<u>official personally</u> engaged in conduct that would give rise to liability" and as such Plaintiff has failed to state any claims against these Defendants (ECF No. 33 at 4-5). Because Defendants do not substantively address the failure to train claim, the Court addresses Defendants' argument concerning the lack of individual action taken with respect to the supervisor Defendants named in the fourth cause of action. In her opposition Plaintiff argues that "Plaintiff has alleged in her SAC that the school Board Defendants' subordinate Defendants committed constitutional violations with sufficient facts to allege a causal connection between the violation and the supervisor's wrongful conduct." (ECF No. 35 at 23).

A supervisor may be liable under Section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Henry A. v. Willden,* 678 F.3d 991, 1003-04 (9th Cir. 2012) (citing *Starr v. Baca,* 652 F.3d 1202, 1207 (9th Cir. 2011)). In the absence of overt personal participation in the allegedly offensive act, Plaintiff must allege facts to show that supervisory defendants "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (quoting *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)) (internal quotations marks omitted). "The inquiry into causation must be individualized to focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). As the Supreme Court held in *Ashcroft v. Iqbal*, a Plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution. 556 U.S. 662, 676 (2009). For supervisory employees in discrimination cases, the plaintiff "must plead sufficient factual matter to show that [the defendants] adopted and implemented the […] policies…for the purpose of discriminating." *Id.*

This Court dismissed the FAC's claims as to the Defendants named in the fourth cause of action because Plaintiff did not allege that any of these Defendants "participated in or directed any specific violations." (ECF No. 30 at 9). While the SAC adds over ten pages of additional allegations, these allegations are substantively no different than those included in the FAC and do not establish a causal connection between any of these Defendants and the events surrounding Neil's suspensions, expulsion, or suicide. The additional allegations in the SAC include several paragraphs about national studies and publications concerning suicides in schools. (SAC ¶¶28-50).[21] However, as with the FAC, the SAC contains no allegations that any of these Defendants were aware of or participated in any of the circumstances as specifically related to the decisions concerning Neil's discipline at either school. Additionally, the facts in the SAC do not evidence that these Defendants implemented any policies, particularly a policy that had the purpose of discriminating.

The only references to any of these Defendants are generalized allegations of knowledge as to unconstitutional suspension policies and conclusory statements as to a failure to train on discrimination and suicide prevention as the cause of Neil's suicide. (SAC ¶¶ 74-108). Plaintiff argues that these supervisor Defendants "implemented unconstitutional disciplinary practices, policies habits and customs that resulted in district-wide suspension and expulsion of African American students in violation of the 14th Amendment to the Constitution," were "deliberately indifferent to their obligation to adopt, train, and supervise their subordinate school officials to follow anti-discrimination, anti-harassment, anti-intimidation, and anti-bullying policies and have failed to investigate and resolve complaints of discrimination, harassment and intimidation, and if such actions are witnessed, take immediate steps to intervene," and "have been on notice of numerous instances of unconstitutional school discipline policies." (ECF No. 35 at 15, 16, 18).

---

[21] The SAC also includes new allegations concerning a student calling Neil a "dyke,"(SAC ¶ 53), and allegations that Neil was suspended "because Defendants did not want a gay, African-American female football player at their school." (SAC ¶ 67). There is also an additional allegation that Defendant Galas was aware that Neil had talked about committing suicide to a friend, and notified Plaintiff Cyprian. (SAC ¶ 65). None of these additional allegations relate to conduct or knowledge of the supervisory Defendants.

The SAC does not specify whether either Beyer or Downey had a suicide prevention training or policy in place.

However, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (internal citations omitted). "General allegations that do not establish a link between the conduct alleged and specific defendants do not meet the minimal pleadings required to defend against a Rule 12(b)(6) motion" and allegations of what Defendants "in general knew or did" lacks the requisite specificity. *Vivanco v. California Dep't of Corr. & Rehab.*, No. 117CV00434LJOBAM, 2017 WL 2547026, at *4 (E.D. Cal. June 13, 2017). In *Vivanco*, the complaint included allegations that "customs, practices or policies" at the State Prison led to inmate's suicide including the "failures to establish a suicide prevention program, to provide staff and training in order to offer adequate psychiatric care, to implement sufficient safety and suicide prevention guidelines, and to properly classify and house suicidal inmates" and this was not sufficient to establish individual liability under § 1983 to survive a motion to dismiss. Besides containing the same conclusory statements as the FAC, the allegations in the SAC do not establish that any of these Defendants' conduct had a "sufficient causal connection" with a constitutional violation or that they "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights." *See Hansen*, 885 F.2d at 646. Indeed, the SAC (much like the FAC) does not offer any *facts* that would plausibly connect these Defendants to the alleged constitutional violations. Moreover, the SAC's allegation that these Defendants "must have known" (*see* SAC ¶ 148; FAC ¶125) about the effect of allegedly violative policies, even if supported by specific facts, is insufficient to state a claim. (*See* ECF No. 30 at 9-10, collecting cases).[22]

---

[22] Although not raised in the motion to dismiss, a plaintiff attempting to name a supervisor as a defendant in a Section 1983 claim must also show that the supervisor had the requisite state of mind to establish liability, namely the state of mind required by the particular constitutional claim. *Oregon State University Student Alliance v. Ray*, 699 F.3d 1053, 1071 (9th Cir. 2012). Regarding a lack of training, the requisite state of mind is "deliberate indifference" to the rights of citizens whom the untrained employees are likely to encounter. *See City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989); *Flores v. Cty. of Los Angeles*, 758 F.3d 1154, 1158–59 (9th Cir. 2014). Similarly, the deliberate indifference standard also applies to claims that a supervisor failed to investigate claims of discrimination. *Walsh v. Tehachapi Unified Sch. Dist.*, 827 F. Supp. 2d 1107, 1116 (E.D. Cal. 2011). To meet this standard, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to

In sum, the SAC's allegations with respect to the supervisory defendants are the same allegations that were included in the FAC which resulted in Defendants Grenbeaux, Zwahlen, Brown, Neumann, Marks, Walker, Able, Johnson, Rydquist, and Betschart being dismissed. (ECF No. 30 at 8-10). Therefore, the fourth case of action is DISMISSED WITH LEAVE TO AMEND.

## VI. **CONCLUSION AND ORDER**

Accordingly, the Court hereby orders:

1. The Modesto City Schools District is DISMISSED;
2. The first cause of action is DISMISSED WITH LEAVE TO AMEND;
3. Defendants' motion to dismiss the second cause action is DENIED;
4. The fourth cause of action is DISMISSED WITH LEAVE TO AMEND;

Plaintiff shall have twenty (20) days from electronic service of this Order to file an amended complaint or give notice that she will stand on the current pleading. **There will be no further opportunities for amendment**.

IT IS SO ORDERED.

Dated: **October 17, 2017**    **/s/ Lawrence J. O'Neill**
UNITED STATES CHIEF DISTRICT JUDGE

---

demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (internal quotation omitted). It is possible, however, that liability for failure to train law enforcement officers might arise from a single incident if "in light of the duties assigned to specific officers ... the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers ... can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390. Evidence of a single incident can only trigger liability if the violation of an individual's rights was a "highly predictable consequence" of the failure to train. *See Doe v. Alhambra Sch. Dist.*, 407 F. App'x 90, 92 (9th Cir. 2010); *Bryan County v. Brown,* 520 U.S. 397, 410 (1997) ("'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."); *Figueira by & through Castillo v. Cty. of Sutter*, No. 2:15-CV-00500-KJM-AC, 2015 WL 6449151, at *8 (E.D. Cal. Oct. 23, 2015) (dismissing claim for municipal liability with leave to amend and noting "[plaintiff's] suicide alone does not plausibly establish that Yuba and Sutter County provided employees with inadequate training by de facto policy" even where two other deaths in the previous three years were alleged). If Plaintiff decides to amend this claim, counsel is cautioned in light of Fed. R. Civ. P. 11 to keep the entire legal standard in mind.