# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DONESHIA NEIL, Deceased, THROUGH HER SUCCESSOR IN INTEREST LATISHA CYPRIAN; LATISHA CYPRIAN, Individually,**<br><br>Plaintiff,<br><br>v.<br><br>**MODESTO CITY SCHOOLS DISTRICT, et al.,**<br><br>Defendants. | 1:17-cv-0256-LJO-SKO<br><br>**MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEEFENDANTS' MOTION TO DISMISS; ORDER DENYING MOTION TO STRIKE**<br><br>(ECF Nos. 42, 43, 44) |

## I. INTRODUCTION

Doneshia Neil ("Neil"),[1] deceased, through her successor in interest Latisha Cyprian, ("Plaintiff" or "Cyprian") filed a third amended complaint ("TAC") in this action on November 6, 2017 against Fred Beyer High School Principal Dan Park, Fred Beyer High School Assistant Principal Nadene Galas, Fred Beyer High School Campus Supervisor Gary Carvalho, Thomas Downey High School Principal Richard Baum, Thomas Downey High School Assistant Principal

---

[1] Defendants indicate that school administrative records show that the proper spelling of Doneshia's last name is Neal rather than Neil. (ECF No. 42-1 at 2 n. 1). The Court continues to refer to her as Neil pursuant to Plaintiff's submissions.

1

Christopher Chilles[2] ("Defendants"), and Does 1-50. This action arises out of Neil's suicide following discipline and expulsion from two public high schools in Stanislaus County.

## II. <u>FACTUAL ALLEGATIONS</u>

In the fall of 2014,[3] Neil, an African-American girl, was enrolled as a high school freshman at Fred Beyer High School ("Beyer") in Modesto, CA. (TAC ¶ 20). Neil was an honor roll student and an active participant in several Beyer High School sports teams. (*Id.*) In the months before Neil's death, she was having difficulties with a Caucasian student and in December 2014, the Caucasian student vandalized Neil's locker. (*Id.* ¶ 21). On January 12, 2015, Neil was involved in a verbal altercation with the Caucasian student and the Caucasian student called Neil a "dyke." (*Id.* ¶ 22). The Caucasian student's boyfriend became involved in the argument and two of Neil's schoolmates interceded on her behalf. (*Id.*). Neil and at least one other African-American student were suspended[4] following the incident, but the Caucasian student and her Caucasian boyfriend were not. (*Id.* ¶¶ 22-24). The complaint alleges that Neil was escorted to Gala's office and informed she would be suspended. (*Id.* ¶ 23). Plaintiff alleges that Neil was not given notice or the opportunity to tell her side of the story. (*Id.* ¶¶ 25-26). On January 21, 2015, Defendant Galas contacted Plaintiff to inform her that Neil could not return to school because Galas heard that Neil had sent a threatening text message to the Caucasian student and that she made sexually harassing statements towards the Caucasian student. (*Id.* ¶¶ 29-30). Galas suggested that Neil be sent to an inferior alternative school, called Turnaround Opportunity School ("TOPS") (*Id.* ¶ 31). Plaintiff Cyprian was either forced or pressured into withdrawing Neil from Beyer High School and sending her to Thomas Downey High School ("Downey") to avoid having to send her to TOPS. (*Id.* ¶¶ 31-35). On January 26, 2015, Galas

---

[2] This Defendant's last name is alternately spelled "Chilles" and "Chillis" in the TAC. The Court will refer to this Defendant as "Chilles."
[3] The TAC indicates that Neil was enrolled in Beyer High School in the fall of 2015. However, most of the incidents alleged in the TAC, including Neil's suicide, took place in January and February of 2015. The Court assumes that Neil enrolled in Beyer High School in the fall of 2014 and that the TAC's use of "2015" was a typographical error.
[4] It is not clear from the TAC whether one or two African American students were suspended in addition to Neil. (*Compare* TAC ¶ 23 *with* ¶ 24).

called Plaintiff and stated that she was aware that Neil's friend said Neil was talking about killing herself in the previous week. (*Id.* ¶ 34). Defendant Galas also said she had arranged Neil's enrollment at Downey. (*Id.*).

Shortly after transferring to Downey High School, Neil was accused of being involved in a fight and suspended for leaving school by Defendant Chilles allegedly without notice or an opportunity to be heard. (*Id.* ¶¶ 37-38). Neil steadfastly denied any involvement in the incident. (*Id.*) On February 6, 2015, while Neil was suspended, her mother was informed by Chilles by voicemail that Neil could not return to Downey High School, and that she could either enroll at TOPS or return to Beyer High School. (*Id.* ¶ 39). Plaintiff contacted Defendant Galas to try to re-enroll Neil at Beyer High School, but was unsuccessful. (*Id.*)

At some time on February 6, 2015,[5] Neil committed suicide by consuming a toxic, lethal dose of over-the-counter antihistamine (allergy) medicine. (*Id.* ¶ 40). Chief Deputy Coroner Sergeant Ed Ridenour of the Stanislaus County Coroner's Office made relevant observations about Neil's death, drawing in part on Neil's suicide note. (*Id.*). Sergeant Ridenour noted that Neil indicated in her suicide note that she "believed her life was over [and that] she based [her belief in part] on being expelled from Beyer High School." (*Id.*) Sergeant Ridenour also noted that Neil "mentioned [in her suicide note] about being transferred to a new school and not having any friends there." (*Id.*). Sergeant Ridenour also indicated that "[b]ased on my training and experience, I believe . . . other incidents which may have directly influenced her decision [to commit suicide] were the recent expulsion from school." (*Id.*).

### III. PROCEDURAL HISTORY

Plaintiff has filed three prior complaints in this action, each with varying Defendants and causes of action.[6] In the second amended complaint ("SAC"), Plaintiff alleged four causes of action all under 42 U.S.C § 1983 ("§ 1983"), for violations of both Neil and Plaintiff Cyprian's

---

[5] The TAC lists this date as February 6, 2016 in some paragraphs (TAC ¶ 40), while in other paragraphs the date is listed as February 6, 2015. (TAC ¶ 39). Based on the context, it appears that "2016" is a typographical error, and that Plaintiff intended this date to be February 6, 2015.

[6] The Court refers to its prior order on Defendants' motion to dismiss for details on prior variations of the complaint. (ECF No. 39 at 3-5).

Fourteenth Amendment rights, against the current Defendants, as well as school board members Defendants. In sum and substance, these § 1983 claims included: 1) violation of Plaintiff Cyprian's own rights under the First and Fourteenth Amendments to a familial relationship with her daughter; 2) violation of Neil's Fourteenth Amendment right to substantive due process under the "danger creation" doctrine; 3) violation of Neil's Fourteenth Amendment procedural and substantive due process rights, as well as equal protection claims; and 4) violation of one or both Plaintiff Cyprian and Neil's Fourteenth Amendment rights to substantive due process under a theory of failure to train and failure to investigate. (ECF No. 31, ¶¶112-152). The Court dismissed the first cause of action with leave to amend, indicating that it would be the last opportunity to amend. (ECF No. 39). Defendants did not substantively address the law concerning the second cause of action and as such their motion to dismiss the claim was denied. (*Id.*). Defendants did not move to dismiss the third cause of action and as such the substance of the equal protection and procedural due process violations has not previously been tested. (*Id.*). Lastly, the fourth cause of action against the school board members and certain administrator Defendants for failure to train and investigate were dismissed with leave to amend for failing to allege that any of the Defendants "participated in or directed any specific violations." (ECF No. 39 at 15).

In the TAC, Plaintiff Cyprian now names five defendants in their individual capacities – Park, Galas, Carvalho, Baum, and Chilles – and does not bring any claims individually but only as Neil's successor in interest. (ECF No. 40). The TAC states a single cause of action pursuant to § 1983. In sum and substance, the § 1983 claims include: 1) violation of Neil's equal protection rights on the basis of her race; 2) violation of Neil's Fourteenth Amendment procedural due process rights in the disciplinary proceedings resulting in suspensions and expulsion; and 3) violation of Neil's Fourteenth Amendment right to substantive due process resulting in her suicide. Plaintiff alleges federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 1343(a)(3) and (4). Venue is proper in this Court.

Now before the Court is the Defendants' motion to dismiss the single cause of action set forth in the TAC pursuant to § 1983 for violation of Neil's Fourteenth Amendment rights. (ECF

4

No. 42). Defendants' motion also includes a motion to strike certain portions of the TAC. (*Id.* at 8). Plaintiff opposed Defendants' motion. (ECF No. 43). Defendants submitted a reply. (ECF No. 44). Defendants' motion is now ripe for review, and is suitable for disposition without oral argument. *See* Local Rule 230(g).

## IV. **STANDARD OF DECISION**

As recited in the Court's prior orders, a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the allegations set forth in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether a complaint states a claim upon which relief may be granted, the Court accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

5

suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. In other words, the complaint must describe the alleged misconduct in enough detail to lay the foundation for an identified legal claim.

"Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). To the extent that the pleadings can be cured by the allegation of additional facts, the Court will afford the plaintiff leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## V. **DISCUSSION**

The TAC contains one cause of action which states claims under § 1983 for violations of Neil's Fourteenth Amendment rights to equal protection, procedural due process, and substantive due process. Defendants argue all these claims should be dismissed because Plaintiff has not shown that Defendants acted with deliberate indifference. (ECF No. 42-1 at 2).[7] Plaintiff argues that the TAC sufficiently pleads facts to establish these alleged violations. (ECF No. 43).[8]

To state a claim under § 1983, plaintiff must allege that: (1) the defendant was acting under color of state law at the time the complained of act was committed; and (2) the defendant's conduct deprived plaintiff of rights, privileges, or immunities secured by the Constitution or laws

---

[7] Defendants do not address the applicable law for the equal protection and procedural due process claims in the motion to dismiss but attempt to do so in the reply brief. (ECF Nos. 42-1, 44).

[8] Plaintiff also argues that Defendants waived their challenge to this cause of action pursuant to Rule 12 "because [Defendants] failed to object to the exact same causes of actions which were pled in plaintiff's first and second amended complaints." (ECF No. 43 at 7). Plaintiff made the exact same argument in its opposition to dismissal of the SAC. (ECF No. 35 at 30). As this Court's prior Order stated, Rule 12(h)'s provision concerning waiver is not applicable. (ECF No. 39 at 8 n.12). Rule 12(h) states "[a] party waives any defense listed in Rule 12(b)(2)-(5)" by omitting it from a prior motion and this is a motion under 12(b)(6). Fed. R. Civ. P. 12(h)(1).

6

of the United States. *Jensen v. City of Oxnard*, 145 F.3d 1078, 1082 (9th Cir. 1998). There is no dispute that the Defendants were acting under the color of state law. The Court addresses the applicable law for each of Plaintiff's § 1983 claims below and whether cognizable claims are stated for equal protection, procedural due process, and substantive due process violations.

A.     **Equal Protection Claim**

The Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *Green v. City of Tucson,* 340 F.3d 891, 896 (9th Cir. 2003) (internal citation omitted). "To establish a § 1983 equal protection violation, the plaintiff[ ] must show that the defendants, acting under color of state law, discriminated against [her] as [a] member[ ] of an identifiable class and that the discrimination was intentional." *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1134 (9th Cir. 2003). Race and sexual orientation are identifiable classes for equal protection purposes. *See Washington v. Davis,* 426 U.S. 229, 239 (1976) ("The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race."); *Flores*, 324 F.3d at 1137 (sexual orientation is an identifiable class for equal protection purposes). School officials are prohibited from intentionally treating students disparately on the basis of their protected status. *See Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000). The Ninth Circuit has "held that § 1983 claims based on Equal Protection violations must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent." *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998).

While the allegations in the TAC still remain convoluted, the crux of Plaintiff's equal protection claim is that Neil was unconstitutionally treated differently on account of her race in the disciplinary decision to suspend her, and at least one other African American student, but not the two Caucasian students involved in the incident on January 12, 2015 at Beyer. (TAC ¶¶ 22-

24).[9] Besides conclusory statements that the Beyer Defendants intentionally discriminated against Neil based on her race, the TAC is sparse on factual allegations which support the theory that the disciplinary decisions were intentional discrimination. However, the allegation concerning Neil and another African American student's different treatment in comparison to the two Caucasian students in relation to the January 12, 2015 incident is enough at this stage to plead a cognizable equal protection claim in that it is "at least susceptible of an inference of discriminatory intent." *Monteiro*, 158 F.3d at 1026; *see also Walsh v. Tehachapi Unified Sch. Dist.*, 827 F. Supp. 2d 1107, 1117 (E.D. Cal. 2011) ("To plead a cognizable equal protection claim, [Plaintiff] must simply allege facts that plausibly show that Decedent was discriminated against as a member of an identifiable class") (citing *Flores,* 324 F.3d at 1135); *Smith ex rel. Smith v. Seligman Unified Sch. Dist. No. 40 of Yavapai Cty., Ariz.*, 664 F. Supp. 2d 1070, 1079 (D. Ariz. 2009) ("The Equal Protection Clause is undoubtedly implicated when school officials make class-based decisions in the punishment context, treating distinct groups of individuals categorically differently"); *but see Esonwune v. Regents of Univ. of California*, No. 17-CV-01102-LB, 2017 WL 4025209, at *7 (N.D. Cal. Sept. 13, 2017) (dismissing equal protection claim with leave to amend and finding allegations that African-American student was, intentionally and without rational basis, treated differently in a disciplinary process from non-African American was a conclusory allegation of intentional discrimination).

In contrast, there is no factual content alleged in the TAC that indicates the suspension and expulsion decisions at Downey were motivated by race or other identifiable class besides conclusory allegations. (TAC ¶ 36). Correspondingly, these conclusory allegations do not provide sufficient factual content to support an equal protection claim against Defendants Chilles and Baum, who were the principal and assistant principal at Downey. *See*, *e.g.*, *Iqbal*, 556 U.S. at 678. Additionally, with respect to Defendant Park, the only allegations concerning his personal

---

[9] Plaintiff only conclusory states that Neil was unconstitutionally discriminated against for being a lesbian and there is no factual content alleged that supports the theory that there was intentional discrimination on the basis of Neil's sexual orientation. (TAC ¶¶ 20, 25, 36).

8

conduct in relation to Neil's Beyer suspension are conclusory statements. (TAC ¶¶ 27, 31, 35). The TAC states that Park "was aware of the unconstitutional suspension policies at Beyer that led to [Neil's] suspension[,] failed to intervene on her behalf, and was deliberately indifferent to his duties to intercede on behalf of [Neil] to prevent her unlawful suspension." (TAC ¶ 35). As stated in the Court's prior order, such generalized allegations are not sufficient to establish a supervisor's liability. *Vivanco v. California Dep't of Corr. & Rehab.*, No. 117CV00434LJOBAM, 2017 WL 2547026, at *4 (E.D. Cal. June 13, 2017) ("General allegations that do not establish a link between the conduct alleged and specific defendants do not meet the minimal pleadings required to defend against a Rule 12(b)(6) motion" and allegations of what Defendants "in general knew or did" lacks the requisite specificity); (ECF No. 39 at 13-17, n. 22). A supervisor may be liable under Section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Henry A. v. Willden,* 678 F.3d 991, 1003-04 (9th Cir. 2012) (citing *Starr v. Baca,* 652 F.3d 1202, 1207 (9th Cir. 2011)). The TAC does not allege sufficient facts to hold Park liable for equal protection violations because it does not allege personal involvement in the suspension decision and, apart from conclusory statements, does not plead that Park's conduct caused the alleged constitutional violation.

Correspondingly, the motion to dismiss Plaintiff's claims for equal protection violations is DENIED as to Defendants Galas and Carvalho and GRANTED as to Defendants Park, Baum, and Chilles.

**B.     Procedural Due Process Claim**

The TAC also alleges that Neil's procedural due process rights were violated when disciplinary actions were taken without notice and an opportunity for Neil to tell her side of the story. (TAC ¶ 47(a)). The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To establish a violation of procedural due process, Plaintiff must first identify a valid liberty or property interest protected by the Constitution. *Hewitt v. Grabicki*, 794

9

F.2d 1373, 1380 (9th Cir. 1986). A student's right to a public education is a property interest protected by the Due Process Clause. *Goss v. Lopez,* 419 U.S. 565, 574 (1975).[10]

"Students facing temporary suspension have interests qualifying for protection of the Due Process Clause," and such due process requires, "in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against [her]" and, if the student denies the charges, "an opportunity to present [her] side of the story." *Goss*, 419 U.S. at 581. What is required by procedural due process often depends on the specific circumstance but generally due process requires notice and a hearing. *See id.* at 578; *Mathews v. Eldridge,* 424 U.S. 319, 334 (1976) ("Due process is flexible and calls for such procedural protections as the particular situation demands"). For shorter suspensions, contemporaneous notice and hearing is sufficient, as is an informal discussion with the student of the alleged misconduct shortly after it has occurred. *Goss*, 419 U.S. at 582. As a general rule, notice and hearing should precede removal of the student from school. *Id.* When a student is faced with expulsion, due process protections require more formal procedures than a short suspension. *Id.* at 584; *Wynar v. Douglas Cty. Sch. Dist.*, 728 F.3d 1062, 1073 (9th Cir. 2013) (holding that student received adequate due process before being expelled where student received written notice of the charges against him, a list of possible witnesses, a hearing, and the right to be represented by an advocate of his choosing to present evidence and question witnesses).

---

[10] Plaintiff's TAC also makes certain statements concerning Neil's rights being violated when Defendants "failed to properly investigate the difficulties Ms. Neil was having with other students, when they instituted a no-contact order," and when they "refused to serve the Notice of Suspension on either Ms. Neil or her mother" in violation of state or county policy. (TAC ¶1; *see also* ¶¶ 21, 24, 27). The TAC also implies that failure to obtain counseling for Neil and deprivation of her extracurricular opportunities also constituted some kind of violation of her rights. (TAC ¶¶ 34, 45(b)). To the extent that the TAC attempts to allege that these failures somehow amounted to constitutional violations, Plaintiff has provided no legal authority for the proposition. *See Jacobs v. Clark Cnty. Sch. Dist.*, 526 F.3d 419, 441 (9th Cir. 2008) (rejecting the "novel argument" that the district schools "violated due process when they acted" in defiance of their own regulations); *Doe v. Mercer Island Sch. Dist. No. 400*, No. 06–395, 2007 WL 215858, at *4 (W.D. Wash. Jan. 26, 2007), *aff'd*, 288 F. App'x 426 (9th Cir. 2008) ("failure to follow state or local regulations or policies does not ordinarily establish a violation of an individual's right to procedural due process").

The TAC's allegations concerning the procedural due process violations are not altogether clear. With respect to Plaintiff's first suspension from Beyer, the TAC alleges in one instance that it was three days and in another that it was five days. (TAC ¶¶ 24, 27). The number of days Neil was out of school between the January 12, 2015 incident and when Defendant Galas called Plaintiff Cyprian on January 21, 2015 and told her Neil could not return to school separately indicates at least eight days of potential suspension. (TAC ¶¶ 24, 29). Regardless of how many days the suspension actually was, the allegations in the complaint indicate that Neil was given notice of the conduct for which she was being suspended when she was escorted to Defendant Galas's office following the incident and informed of her suspension. (TAC ¶ 23). It is not clear whether Neil was given an opportunity to tell her side of the story in Gala's office.[11] Nor is it clear whether Neil was voluntarily transferred to Downey after Plaintiff Cyprian was persuaded to withdraw Neil or whether it could somehow be characterized as an expulsion when Galas called Plaintiff to tell her Neil could not return to school. (TAC ¶¶ 29, 31-35).

With respect to the allegations concerning Neil's suspension from Downey, the TAC's allegations are not much clearer. The TAC states that Neil was suspended for *leaving school* and appears to admit that she did in fact leave school. (TAC ¶ 37). Yet the TAC goes on to state that she was unconstitutionally suspended without notice or a hearing. (*Id.*). It appears Plaintiff was notified of this suspension by voicemail after the fact. (*Id.*). The TAC then goes on to allege that a day after Neil's suspension from Downey, Plaintiff Cyprian received a voicemail notifying her that Neil could not return to Downey – *i.e.*, was presumably expelled. (*Id.* ¶ 39). If true, the failure to provide Neil with notice and a hearing prior to her expulsion may amount to a violation of her procedural due process rights. As such, viewing the allegations in the TAC in the light most favorable to Plaintiff, the TAC plausibly indicates that Neil's procedural due process rights were violated when she was suspended and expelled from Downey without prior notice or a hearing. (*Id.*).

---

[11] To the extent the TAC's allegations imply a more formal hearing was required for the less than 10 day suspension, that is not the law. *Goss*, 419 U.S. at 581-582.

11

Although the allegations concerning the Beyer suspension and potential expulsion are unclear and questionable as to whether they allege procedural due process violations, the Downey suspension and expulsion raise a plausible inference for a procedural due process violation. Correspondingly, Defendant's motion to dismiss the procedural due process claim is DENIED.

C. **Substantive Due Process Claim**

The TAC alleges that Neil's substantive due process rights under the Fourteenth Amendment were violated in that she was deprived of her right to bodily integrity due to the unconstitutional discipline, suspension and expulsion. (TAC ¶ 47). It appears that Plaintiff is again arguing that Defendants are liable for the violation of Neil's substantive due process rights in this case for failing to prevent Neil's suicide. (ECF No. 43 at 12). This Court previously dismissed these substantive due process claims in the context of Plaintiff's Cyprian's right to a familial relationship with her daughter. (ECF No. 39 at 7-10). The Court further noted that the standard for evaluating whether Neil's individual substantive due process rights were violated was equivalent and as such Neil's substantive due process claims were legally infirm as well. (*Id.* at n.16). Plaintiff does not allege additional facts in the TAC that remediates the legal infirmity noted in the Court's prior order.

Substantive due process "forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with the rights implicit in the concept of ordered liberty.'" *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (quoting *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir.1998)). The "cognizable level of executive abuse of power" for a substantive due process violation is egregious conduct which "shocks the conscience and violates the decencies of civilized conduct." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (internal quotation marks omitted). Mere negligence or liability grounded in tort does not meet the standard for a substantive due process violation. *Id.* at 848-49. To the extent that Plaintiff attempts to state a substantive due process claim with respect to Defendants' disciplinary decisions violating her substantive due process rights (TAC ¶ 47),

Plaintiff has not alleged conduct which is egregious enough to shock the conscience with respect to any of these Defendants.

To the extent that Plaintiff alleges that Defendants violated her right to bodily security by failing to prevent her suicide, the Court addressed this theory of liability in its prior order and dismissed such claims. (ECF No. 39 at 7-10). "It is well established that the Constitution protects a citizen's liberty interest in her own bodily security." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006). It is also well established that the public has no constitutional right to sue state actors who fail to protect them from infliction of a private harm. *Id.* The danger creation exception is an exception to this general rule and it requires that the state action affirmatively placed an individual in danger and was then deliberately indifferent to that known danger. *Id.* at 1062-64. Generally, a school district or state official's "failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Harry A. v. Duncan*, 234 F. App'x 463, 464 (9th Cir. 2007) (quoting *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989)). Because Defendants did not actually inflict the ultimate harm, Plaintiff must establish that defendants acted with deliberate indifference in failing to prevent the known danger of Neil's suicide. *See Duncan*, 234 F. App.'x 463, 465. To demonstrate deliberate indifference to the risk of a suicide, a plaintiff must show: "(1) an unusually serious risk of harm, (self-inflicted harm in a suicide case), (2) defendants' actual knowledge of (or, at least, willful blindness to) that elevated risk, and (3) defendants' failure to take obvious steps to address that known, serious risk." *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996) (quoting *Manarite v. City of Springfield*, 957 F.2d 953, 956 (1st Cir. 1992)); *see also Duncan*, 234 F. App'x 463, 465.

Plaintiff has not alleged facts that demonstrate that Defendants were deliberately indifferent to an "unusually serious risk of harm," *i.e.*, Plaintiff's suicide. Like the SAC, Plaintiff's TAC includes one paragraph with a factual allegation that Defendant Galas was told by Neil's friend that Neil talked about killing herself a week prior (following her first suspension) and that Galas notified Plaintiff Cyprian of the fact on January 26, 2015. (TAC ¶

34).[12] The TAC does not allege that Defendants Park, Carvalho, Baum, or Chilles were aware of the statement Defendant Galas relayed to Plaintiff Cyprian, let alone that they had knowledge of an "unusually serious risk of harm" for Neil's suicide. Defendant Galas's secondhand knowledge of a suicidal statement by Neil to a friend also does not constitute knowledge of an "unusually serious risk of harm." Additionally, Defendant Galas addressed the situation to some extent by notifying Plaintiff of Neil's suicidal statement to her friend. *See Duncan*, 234 F. App'x at 465 ("Failing to investigate a vague, second-hand and unsubstantiated report might amount to negligence, but does not constitute actual knowledge or willful blindness."). The facts alleged simply do not show that Defendants acted with deliberate indifference to a known and serious risk.

Nor do the allegations in the TAC show that Plaintiff's suicide was a foreseeable consequence of harsh school discipline. *See Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (holding that student committing suicide was unforeseeable result of harsh school discipline, was extraordinary, and thus that Plaintiffs (student's parents) failed to establish proximate cause with respect to the negligence claim on summary judgment);[13] *see also Hasenfus v. Lajeunesse*, 175 F.3d 68, 70-73 (1st Cir. 1999) (affirming dismissal of substantive due process claim and finding that school had no duty to protect a student from attempted suicide, even when there had been attempts by seven other students in the preceding three months).[14] Plaintiff has not alleged factual content to allow the Court to draw a reasonable

---

[12] In *Wyke v. Polk Cty. Sch. Bd.*, 898 F. Supp. 852, 857 (M.D. Fla. 1995), *aff'd in part*, 129 F.3d 560 (11th Cir. 1997), *certified question withdrawn*, 137 F.3d 1292 (11th Cir. 1998), the court relied on *Deshaney*, 489 U.S. at 197, and held that defendants' actions "did not rise to the level of deliberate indifference," where defendants were aware of two suicide attempts by the student at school the day prior but did not take any action to respond or notify his parents and the student committed suicide at home the next day.

[13] The standard of culpability for a negligence claim is lower than what is required to show deliberate indifference with respect to a substantive due process violation under § 1983. *Grubbs*, 92 F.3d at 899.

[14] The facts of *Armijo By & Through Chavez v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1264 (10th Cir. 1998), cited in the Plaintiff's opposition, are distinguishable. (ECF No. 43 at 12). That case involved the denial of summary judgment where a special education student who expressed

inference that Defendant is liable for the misconduct alleged – causing Neil's suicide. *Iqbal*, 556 U.S. at 678.

The Plaintiff has had several opportunities to amend the complaint and has failed to allege sufficient facts to support a substantive due process violation under the Fourteenth Amendment. Therefore, the substantive due process claim is DISMISSED WITHOUT LEAVE TO AMEND.

**D.     Defendants' Motion to Strike Pursuant to Rule 12(f)**

Without citing to any supporting authority, Defendants argue that the Court should strike certain portions of the TAC. (ECF No. 42-1 at 8). The Defendants request that any reference in the TAC to Plaintiff Cyprian's individual claims be stricken because she has not stated any cause of action individually. (*Id.* (citing TAC ¶¶ 5-6, 41)). Additionally, the Defendants request that "several redundant, immaterial, and impertinent requests in [the] prayer for relief" should be stricken, including a request for punitive damages against entities no longer parties to this litigation, and certain requests for injunctive relief which seek to impose obligations on unnamed "school officials" of a district that is not a party to the action. (*Id.* (citing TAC at p. 21, d(i-iv))). Plaintiff does not address Defendants motion to strike in its opposition. (ECF No. 43).

Federal Rule of Civil Procedure 12(f) permits a court, either on its own or on a party's motion, to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973–74 (9th Cir. 2010) (internal quotation and citation omitted). When a court considers a motion to strike, it "must view the pleading in a light most favorable to the pleading party." *In re 2TheMart.com, Inc. Sec. Lit.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000). A court must deny the motion to strike if there is any doubt whether the

---

threats of suicide, was taken home by Defendants, the principal and school counselor, after his suspension, and Defendants knowingly left him at home alone where they were aware he would have access to firearms and did not notify his parents about his emergency removal from school.

15

allegations in the pleadings might be relevant in the action. *Id.* at 965-966; *Walters v. Fid. Mortg. of CA*, 730 F. Supp. 2d 1185, 1196 (E.D. Cal. 2010) ("A motion to strike should not be granted unless it is absolutely clear that the matter to be stricken could have no possible bearing on the litigation"); *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991), *on reconsideration*, No. CIV. 90-20610 SW, 1991 WL 207480 (N.D. Cal. July 1, 1991) (same). Additionally, "[m]otions to strike are disfavored and infrequently granted." *Neveu v. City of Fresno*, 392 F. Supp. 2d 1159, 1170 (E.D. Cal. 2005); *Dorros v. JP Morgan Chase Bank, N.A.*, No. CV1008319DMGPJWX, 2011 WL 13217681, at *4 (C.D. Cal. July 22, 2011) ("Courts generally view Rule 12(f) motions with disfavor and grant them infrequently . . . because of the limited importance of the pleadings in federal practice"); *see also BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) ("Striking a party's pleading . . . is an extreme and disfavored measure").

Defendants' request to strike paragraphs 5, 6, and 41 of the TAC[15] is denied as these paragraphs relate to background information that is relevant. *Johnson v. GMRI, Inc.*, No. CV F 07 0283 LJO DLB, 2007 WL 963209, at *2 (E.D. Cal. Mar. 29, 2007) ( "[a]llegations supplying background or historical material or other matter of an evidentiary nature will not be stricken unless unduly prejudicial to defendant") (citing *Fuchs Sugars & Syrups, Inc. v. Amstar Corp.*, 402 F. Supp. 636, 637-638 (S.D.N.Y. 1975)). To the extent that paragraph 5 implies that Plaintiff Cyprian has stated claims individually, the Court recognizes that the TAC does not contain any causes of action that state a claim on behalf of Plaintiff Cyprian individually.

With respect to the request to strike the portion of the prayer for relief requesting punitive damages, it appears Defendants misread subsection (b) when they state that "the prayer seeks to impose punitive damages against entities that are *no longer parties to the lawsuit*." (ECF No. 42-1 at 8) (emphasis added). The portion of subsection actually states that "punitive damages *are not sought against* Stanislaus County . . . ." (ECF No. 40 at p. 21) (emphasis added). Defendants'

---

[15] It appears that the reference to paragraph 6 of the TAC was a typographical error by Defendants. (ECF No. 42-1 at 8).

16

motion to strike does not address the propriety of punitive damages against the existing Defendants. Therefore, the motion to strike this subsection is denied.

Lastly, Defendants request to strike the specific requests in the prayer for relief pertaining to injunctive relief in section d(i-iii) by arguing that these requests "seek[] to impose obligations upon unnamed 'school officials' of a district that is not even a party to the action." (ECF No. 42-1 at 8). Additionally, Defendants state that section d(iv) is "devoid of any legitimate basis or authority" because it requests that a non-governmental agency monitor the individual defendants who are sued in their individual capacities. (*Id.*). Defendants do not provide any supporting citation or further elaboration for this argument. In addition, injunctive relief is available under § 1983. *Rizzo v. Goode*, 423 U.S. 362, 378 (1976) ("Section 1983 by its terms confers authority to grant equitable relief as well as damages . . . .") (internal quotation omitted). More importantly, Defendants have not shown that Rule 12(f) is an appropriate mechanism to strike a claim for certain damages because the subject matter of the request is not "redundant, immaterial, impertinent, or scandalous." *See Whittlestone, Inc.*, 618 F.3d at 974–75 ("We . . . hold that Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law"). The extent to which the specific requests are applicable or enforceable against the specifically named Defendants versus the unnamed school district is not clear particularly because Defendants have not bothered to brief the issue beyond the two sentences quoted above. However, given that motions to strike are highly disfavored and Defendants have not shown it is "absolutely clear that the matter to be stricken could have no possible bearing on the litigation," the Court denies Defendants motion to strike sections d (i-iv) of the prayer for relief. *Walters*, 730 F. Supp. 2d at 1196; (ECF No. 40 at 21).

## VI. <u>CONCLUSION AND ORDER</u>

For the reasons set forth above, the Court hereby ORDERS:

1. The motion to dismiss the equal protection claim is DENIED as to Defendants Galas and Carvalho;
2. The motion to dismiss the equal protection claim is GRANTED WITHOUT LEAVE TO AMEND as to Defendants Park, Baum, and Chilles;

3. The motion to dismiss the procedural due process claim is DENIED;
4. The motion to dismiss the substantive due process claims is GRANTED WITHOUT LEAVE TO AMEND;
5. The motion to strike is DENIED.

IT IS SO ORDERED.

Dated: **January 25, 2018**  /s/ Lawrence J. O'Neill
UNITED STATES CHIEF DISTRICT JUDGE